Name: Oscar Adalberto Gonzalez Cordova

Address: 1905 Pico Blvd.

Santa Monica, Ca. 90405

Phone: (562) 382-5128

Fax: oscarsrydar70@protonmail.com

In Pro Per

FILED
CLERK, U.S. DISTRICT COURT

1/1/24

CENTRAL DISTRICT OF CALIFORNIA
BY:    CS    DEPUTY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

Oscar Gonzalez, an individual,

                                    Plaintiff

v.

Michael Javier Solis, in his individual capacity; Deborah Anne Delport, in her individual capacity; (see attachment 1)

                                    Defendant(s).

CASE NUMBER:

**CV24-73-JGB(MAA)**

To be supplied by the Clerk of
The United States District Court

**Verified Complaint for Damages
Pursuant to 42 U.S.C. § 1983**

**Jury Trial Demanded**

## JURISDICTION

1.  This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331.

2.  This Court has supplemental jurisdiction over the state law tort claims under 28 U.S.C. § 1367.

## VENUE

3.  Venue is proper under 28 U.S.C. § 1391(e) because the events giving rise to plaintiff's claims occured in the Central District of California.

## PARTIES

4.  Plaintiff Oscar Gonzalez is a 41 year-old Hispanic man with no children. Plaintiff at all times relevant to this Complaint has been a resident of Los Angeles, California and a legal permanent resident of the U.S.

1/38

ATTACHMENT 1

Stephanie Soyoung Choi, in her individual capacity;

Parker Shea Sampson, in her individual capacity;

Paul Munoz, in his individual capacity;

Fred Walker, in his individual capacity;

Vania Quiroz, in her individual capacity;

Ray Thompson, in his individual capacity;

Angela Hernandez, in her individual capacity;

Daniel Betancourt, in his individual capacity;

and DOES 1 thru 70, inclusive

DEFENDANT(s).

2/38

5. Defendant Michael Javier Solis("Mr.Solis"), a male Asian, was at all times relevant to this Complaint an employee with the Los Angeles County Public Defenders Office.

6. Defendant Deborah Anne Delport("Ms.Delport"), a female Caucasian, was at all times relevant to this Complaint an employee with the Los Angeles County District Attorney's Office.

7. Defendant Stephanie Soyoung Choi("Ms.Choi"), a female Aian, was at all times relevant to this Complaint an employee with the Los Angeles County Public Defenders Office.

8. Defendant Parker Shea Sampson("Ms.Sampson"), a female Caucasian, was at all times relevant to this Complaint an employee with the Los Angeles County Public Defenders Office.

9. Defendant Paul Munoz("Munoz"), a male Hispanic, was at all times relevan to this Complaint an officer with the Huntington Park Police Department ("HPPD").

10. defendant Fred Walker("Mr.Walker"), amale Black, was at all times relevant to this Complaint an employee with the Los Angeles County Department of Health Services ("DHS").

11. Defendant Vania Quiroz("Ms.Quiroz"), a female Hispanic, was at all times relevant to this Complaint an employee of the Los Angeles County Department of Health Services ("DHS").

12. Defendant Ray Thompson("Mr.Thompson"), a male Hispanic was at all times relevant to this Complaint an employee of the California Department of State Hospitals ("DSH").

13. Defendant Angela Hernandez("Ms.Hernandez"), a female Hispanic, was at all times relevant to this Complaint Conspiring and acting jointly with County Officials to violate Plaintiff's rights.

14. Defendant Daniel Betancourt("Mr.Betancourt"), a male Hispanic, was at all times relevant to this Complaint conspiring and acting jointly with City Officials to violate Plaintiff's rights.

15. DOES 1 thru 3, and each of them, were duly appointed law enforcement officers and/or employees of the Huntington Park Police Department ("HPPD").

16. DOES 4 thru 14, and each of them, were employees of the Los Angeles County Department of Health Services ("DHS").

17. DOES 15 thru 20 , and each of them, were employees of the Los Angeles County Jail Correctional Health Services ("CHS").

18. DOES 21 thru 25, and each of them, were employees of the Los Angeles County Jail Food Services ("FS").

3/38

19. DOES 26 thru 43, and each of them, were employees of the California Department of State Hospitals ("DSH").

20. DOES 44 thru 48, and each of them, were employees of the California Department of State Hospital Food Services ("HFS").

21. DOES 49 thru 70, and each of them, were duly appointed employees of the Los Angeles County Sheriff's Department.

22. Plaintiff is ignorant of the true names of Defendants sued as DOES 1 thru 70, inclusive, and therefore sues these Defendants by such fictious names. Plaintiff will amend this Complaint to allege said Defendants' true names and capacities when ascertained.

23. Each of the individual Defendants sued herein is sued in his individual capacity.

STATEMENT OF FACTS

FALSE IMPRISONMENT

24. Plaintiff was arrested Mar. 18, 2020 because of the statements of Defendants Angela Hernandez and Daniel Betancourt.

25. Plaintiff kept telling Defendant John Doe and Defendant John Doe as well as Defendant Sgt. John Doe that Plaintiff didn't do anything

26. As Plaintiff sat on the curb handcuffed an officer came to Defendant Sgt. John Doe and said, "Sarge, she really doesn't want to go thru with this", reffering to Defendant Angela Hernandez.

27. Never the less Plaintiff was held and sent to a hospital for evaluation.

28. Defendant Sgt. John Doe said that Plaintiff was acting "erratic" and talking really fast.

29. Plaintiff was just upset because Plaintiff hadn't done anything to be handcuffed and detained.

30. After one (1) day in the hospital Plaintiff was released to the custody of the Defendants, HPPD Officers John Doe and John Doe and was taken to the Los Angeles County Jail and booked.

31. Defendant HPPD Sgt. John Doe had said, "It's an easy 245", meaning a Penal Code 245 (a), Assault with a Deadly Weapon("ADW").

4/38

32.    Plaintiff was arrested for "Assault with a Deadly Weapon" and "Criminal Threats".

FALSE IMPRISONMENT

33.    On or around early April 2020 Plaintiff had Plaintiff's preliminary hearing in Norwalk Superior Court, where on information and belief, because "He" also showed up fort Plaintiff's trial, Defendant HPPD officer Paul Munoz testified against Plaintiff causing Plaintiff to stay in jail.

34.    Defendant Angela Hernandez did not show up to Plaintiff's preliminary hearing even though she was the supposed victim at the time.

RETALIATION FOR FREE SPEECH AND WANTING TO ENGAGE IN PROTECTED
CONDUCT / INEFFECTIVE COUNSEL AND IMPEDING MY DEFENSE

35.    On or around mid April 2020, Plaintiff posted a comment on a celebrity actress' public Facebook page which it was known that Plaintiff used to do.

36.    Plaintiff posted that what Plaintiff was gonna do was Have Defendant Angela Hernandez get on the stand and commit perjury, then Plaintiff was gonna sue Defendant Angela Hernandez in samall clainms Court.

37.    After that Plaintiff was not allowed to take Plaintiff's case to trial.

38.    Pkaintiff's first attorney Defendant Michael Javier Solis told Plaintiff that he shouldn't have assaulted Defendant Angela Hernandez.

39.    Defendant Michael Javier Solis told Plaintiff that he shouldn't take Plaintiff's case to trial because Plaintiff has a record and Defendant Angela Hernandez doesn't.

40.    Plaintiff wanted to take Plaintiff's case to trial and have a speed trial.

41.    Plaintiff did not want to take a plea bargain for two (2) years with half-time in State Prison or go to a mental health diversion program, because Plaintiff didn't do anything.

42.    Because of that Defendant Michael Javier Solis had Plaintiff evaluated for competency.

43.    Plaintiff said Plaintiff was competent, then Plaintiff was found competent and told Defendant Michael Javier Solis, Plaintiff told you , Plaintiff's competent.

44.    But Defendant Micheal Javier Solis said, "the evaluation wasn't as precise as I wanted it to be".

45.    If Plaintiff didn't agree to go to a mental health diversion preogram or take the plea

5/38

bargain for two (2) years with half-time in State Prison, Defendant Michael Javier Solis would have Plaintiff evaluated again.

46.    This all occured during court dates between April 2020 and November 2020.

47.    Plaintiff agreed to go to a mental health diversion program because Plaintiff feared going to a mental hospital for competency treatment where Plaintiff would be subjected to involutary medications.

48.    Plaintiff went to court in November 2020 and accepted the conditions and terms of the program and was released and picked up by the program December 12, 2020.

49.    Plaintiff went to interim housing for two (2) days, and finally arrived at Christ Centered Ministries("CCM"). A program from the Office of Diversion and Reentry("ODR"), with the Los Angeles County Department of Health Services("DHS").

RETALIATION FOR FREE SPEECH AND WANTING TO ENGAGE IN PROTECTED

CONDUCT / INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS /

HARRASSMENT / CRUEL AND UNUSUAL PUNISHMENT

50.    On or around mid January to early February, Defendant Vania Quiroz called Plaintiff to the office and asked Paintiff, what was Plaintiff going to do, go to school or go to work.

51.    Plaintiff told Defendant Vania Quiroz that because of Plaintiff's symptoms Plaintiff could not work or go to school.

52.    Defendant Vania Quiroz told Plaintiff that Plaintiff could not use Plaintiff's mental illness as an excuse.

53.    Plaintiff told Defendant Vania Quiroz, "it's not an excuse, Plaintiff can't do it".

54.    Ther following week Plaintiff saw the progaram Dr., and Plaintiff told the Doctor that Plaintiff's symptoms do not let Plaintiff concentrate and most times distract Plaintiff from whatever Plaintiff is doing, so Plaintiff can't work or go to school.

55.    The program Doctor asked Plaintiff if Plaintiff can go to groups. Plaintiff said "yeah". Can Plaintiff do chores? Plaintiff said "yeah". The program Doctor told Plaintiff " don't worry, just do that and Plaintiff will be alright, Plaintiff can stay in the program".

56.    The following week Plaintiff was called to the office because Plaintiff had a phone call

6/38

from Plaintiff's probation officer.

57.    Plaintiff got the phone and was gonna walk out with it when Defendant client aid Vania Quiroz told Plaintiff "take the call in here".

58.    Defendant Vania Quiroz looked at Defendant project manager Fred Walker and Defendant Fred Walker said, "yeah take the call in here".

59.    Plintiff talked to Probation Officer and Probation Officer asked Plaintiff that what was Plaintiff going to do, go to school or go to work.

60.    Plaintiff told Probation officer that Plaintiff had talked to the program Doctor and the program Doctor told Plaintiff that Plaintiff did not have to go to school or work and that groups and chores were fine.

61.    Probation Officer said, "alright, that's cool", and told Plaintiff to go to groups and to do chores. Plaintiff said "alright".

62.    The following morning Plaintiff was having breakfast when the program nurse came in.

63.    Defendant Vania Quiroz went to the program nurse and told the program nurse, "If the clients can't go to school or go to work, then they are not fit for this program". "I'm just giving you a heads up".

64.    On or around March 2020, Plaintiff called the Depatment of Public Social Servicess ("DPSS"), and Plaintiff talked to a social worker.

65.    Plaintiff told the social worker at the DPSS office that Plaintiff was here legally and had gotten "Gneral Relief" (cash aid) before as well as food stamps.

66.    Social worker told Plaintiff not to worry if Plaintiff couldn't find the papers Plaintiff needed. She, the social worker, would still approve Plaintiff's General Relief(cash aid) request, and food stamps for a period of about three (3) months so Plaintiff can get on Plaintiff's feet.

67.    DPSS social worker told Plaintiff, "call me in about a week in a half, and I'll have your things ready by then".

68.    Plaintiff told Defendant Vania Quiroz what had happened and Defendant Vania Quiroz said, "that's great".

69.    Plaintiff called Plaintiff's DPSS social worker a week and a half later and Plaintiff's DPSS

7/38

case worker had been changed and the new worker told Plaintiff that Plaintiff would not be getting anything.

70.    Plaintiff told Defendant Vania Quiroz and Defendant Vania Quiroz told Plaintiff, "Don't worry, we're gonna get it for you thru "CAPI". A County program called "Cash Assistance Program for Immigrants".

71.    Three(3) to four (4) days later Defendant Vania Quiroz told Plaintiff that Plaintiff could not get CAPI because Plaintiff did not have children.

72.    On information and belief, Defendant Vania Quiroz called Plaintiff's DPSS social worker and told the social worker that Plaintiff did not have a legal permanent residency card("LPR"), and was not eligible to recieve cash aid or food stamps and if Plaintiff's DPSS social worker gave it to Plaintiff, Plaintiff's DPSS social worker would get in trouble and Defendant Vania Quiroz was just giving Plaintiff's social worker a heads up.

73.    On or around mid to late May 2021, Plaintiff found out thru the internet that plaintiff qualified for Social Security Income ("SSI"), from Federal Law and Regulations No. 416.1618.

74.    Plaintiff contacted right away the services of a pubic entity known as Mental Health Advocacy Services("MHAS"), for help with Plaintiff's SSI application.

75.    At the beginning of June 2021, MHAS sent out a social worker to talk to Plaintiff.

76.    The MHAS case worker asked to take pictures of Plaintiff's I.D. and Medical Insurance information.

77.    One (1) week later thr MHAS social worker stopped by again just to talk to Plaintiff and get some secondary information.

78.    Plaintiff was talking to Plaintiff's MHAS social worker when Defendant Fred Walker came outside, because Plaintiff was talking to MHAS social worker in the front yard area of the program house and asked her for her credentials.

79.    The MHAS case worker showed Defendant Fred Walker, the social worker MHAS badge and gave Defendant Fred Walker, the social workers MHAS business card.

80.    The case worker told Plaintiff she had everything the social worker needed and would pass the information to a colleague who handled the SSI applications.

8/38

81.    About a month and a half later Plaintiff called to check on Plaintiff's SSI application.

82.    Plaintiff was told that Plaintiff's application was given over to the Immigration Department.

83.    Plaintiff was told that Plaintiff didn't have a legal permanent residency card and the case worker for MHAS was gonna help Plaintiff get a LPR card.

84.    Plaintiff already knew that Plaintiff could not get a LPR card because when Plaintiff fought and won Plaintiff's Immigration case, Immigration and Customs Enforcement("ICE"), with the Federal Department of Homeland Security("FDHS"), told Plaintiff that Plaintiff would not be getting a LPR card but a paper called "I-220B".

85.    That's the paper that I would show to anybody asking for my legal presence in the U.S. That's the paper the Social Security Administration would ask for in determinig  weather I qualified for SSI or not, not the LPR card.

86.    Plaintiff told the MHAS social worker that Plaintiff didn't need a LPR card. With the Paper ICE gave Plaintiff, the I-220B was all I needed under Federal Law and Regulations § 416.1618.

87.    The MHAS social worker told Plaintiff that she, the MHAS social worker was a lawyer and, that she, the MHAS social worker was telling Plaintiff that Plaintiff could not get SSI with out a LPR card.

88.    The MHAS social worker then said, "but don't worry were gonna get it for you thru CAPI.

89.    Plaintiff then said, "thru CAPI"? "What are you, the MHAS case worker talking about"?

90.    Plaintiff hung up the phone and Plaintiff knew that Defendant Vania Quiroz was sabbotaging Plaintiff's attempts at aquiring any type of relief or benefits.

91.    On information and belief Defendant Fred Walker gave Defendant Vania Quiroz the MHAS business card of the MHAS social worker who came out to see Plaintiff.

92.    On information and belief Defendant Vania Quiroz called the MHAS office, used her credentials to be able to talk to the MHAS worker that was doing my SSI application and said that Plaintiff did not have a LPR card and did not qualify for SSI and if the HMAS worker helped Plaintiff get SSI she would get in trouble, and Defendant Vania Quiroz was just giving MHAS worker a heads up.

9/38

RETALIATION FOR FREE SPEECH / MEDICAL MALPRACTICE / CRUEL AND

UNUSUAL PUNISHMENT / INTENTIONAL INFLICTION OF EMOTIONAL

DISTRESS / INEFFECTIVE COUNSEL / FALSE IMPRISONMENT

93.    On or around late May early June 2021, the program Doctor decided to try and change Plaintiff's medication.

94.    Plaintiff would complaint that the meds Plaintiff was taking were just fine.

95.    The program Doctor would still try and change them, but when Plaintiff would go to Court for that, and on a progress report, the Court Doctor would leave them how they were.

96.    That started happening from May and June 2021, till September 9, 2021. The program Doctor would change the medication, but the Court Doctor would leave the medications how they were.

97.    And Plaintiff in July 2021 starting going to Court thinking Plaintiff was going to be remanded back to jail due to the medication issue, but the Court Doctor would say Plaintiff could stay on Plaintiff's current meds.

98.    A new employee started to work at the program Defendant Jane Doe.

99.    Starting August 8, 2021 Defendant Jane Doe  started going to Court with Plaintiff.

100.    Plaintiff saw Defendant Jane Doe try to tell the Court and the Court Doctor to remand Plaintiff back to jail.

101.    The Court would say "It's up to the Doctor". Then the Court Doctor would say "Plaintiff is med compliant". "PLaintiff is going to groups and Plaintiff is doing Plaintiff's chores, I'm not going to remand Plaintiff".

102.    In mid August 2021, a new Doctor became employeed at the progaram.

103.    The Doctor told Plaintiff the first time Plaintiff met the Doctor, that the Doctor was not going to change Plaintiff's meds.

104.    On information and belief Defendant Vania Quiroz and the new employee Defendant Jane Doe told the new Doctor that they wanted Doctor to change Plaintiff's medicine to a medicine that Defendant Vania Quiroz and Defendant Jane Doe new that Plaintiff did not want to take.

105.    Plaintiff had mentioned that taking the wrong medication can make Plaintiff feel worse

and even suicidal and Plaintiff did not like experimenting with medications and liked the
medication Plaintiff was on because it had little to no side effects on Plaintiff.

106.    On or around the third (3rd) week of August 2021, the program Doctor called Plaintiff
into his office to tell Plaintiff that he, the program Doctor was going to changes Plaintiff's meds.

107.    Plaintiff argued that Plaintiff and program Doctor had made an agreement that he, the
program Doctor, would not change Plaintiff's medication.

108.    Doctor told Plaintiff that Doctor remembered the agreement, but Doctor was still going to
change Plaintiff's meds.

109.    Plaintiff went to Court. The Court Plaintiff went to for the program Plaintiff was in and
for progress reports was the Criminal Courts Building in downtown Los Angeles.

110.    On September 8, 2021 Plaintiff went to Court and the Court Doctor told Plaintiff that the
program Doctor wanted Plaintiff to take different meds, and the Court Doctor agreed that Plaintiff
should give them a try.

111.    The Judge and Court asked if Plaintiff would give the new meds a try and Plaintiff
promised the Judge and Court that Plaintiff would.

112.    Plaintiff had a check in with ICE on January 3, 2022 and Plaintiff had to be there.

113.    On the way out from Court Plaintiff told Defendant Jane Doe that Plaintiff was just going
to take the meds until Plaintiff cheked in with ICE, then Plaintiff was going to stop.

114.    After Plaintiff's check in with ICE, if the Court wanted to remand Plaintiff, then Plaintiff
was alright with that.

115.    Plaintiff didn't do anything and Plaintiff has been trying to take Plaintiff's case to trial and
fight Plaintiff's case since Plaintiff was arrested back in March 2020.

116.    On September 9, 2021, Defendant Jane Doe called Plaintiff to the office to tell Plaintiff that
Defendant Jane Doe set up an emergency court date because they, Defendant Jane Doe and
program staff had tried to give Plaintiff the new medicine and Plaintiff refused, became beligerant
and began to fight with program nurse and staff, which was not true.

117.    Plaintiff immediately called Plaintiff's lawyer Defendant Stephanie Soyoung Choi.

118.    Plaintiff told Defendant Stephanie Soyoung Choi that nobody had tried to give Plaintiff

11/38

any medicines.

119.    Plaintiff told Defendant Stephanie Soyoung Choi that Plaintiff had promised the Judge that Plaintiff would take the meds.

120.    Plaintiff told Defendant Jane Doe to give Plaintiff the meds right now, get them and Plaintiff will take them right now.

121.    Defendant Jane Doe said "No". "Program nurse and staff already tried and Plaintiff didn't want to, we're going to Court, get ready the Uber is coming".

122.    The therapist Defendant Jane Doe was in the office and Plaintiff asked the therapist Jane Doe, "Have you seen anybody try to give Plaintiff, program nurse, anybody try to give Plaintiff any meds". The therapist Defendant Jane Doe responded "No".

123.    Plaintiff told Plaintiff's lawyer Defendant Stephanie Soyoung Choi who was on the phone " You see, nobody has tried to give Plaintiff any meds.

124.    Plaintiff's lawyer Defendant Stephanie Soyoung Choi said, "let me talk to Defendant Jane Doe", the therapist.

125.    Plaintiff told the therapist Defendant Jane Doe, that Plaintiff's lawyer Defendant Stephanie Soyoung Choi, want's to talk to her, the therapist Defendant Jane Doe.

126.    The therapist Defendant Jane Doe said, "No, I'm not good at talking with lawyers".

127.    Plaintiff said to the therapist Defendant Jane Doe, "All you have to do is tell Defendant Stephanie Soyoung Choi the truth". "That nobody has tried to give Plaintiff any meds".

128.    The therapist Defendant Jane Doe said, "No, thats my boss". Refering to the new employee Defendant Jane Doe.

129.    Plaintiff told Plaintiff's lawyer Defendant Stephanie Soyoung Choi, that the therapist Defendant Jane Doe did not want to talk to Plaintiff's lawyer Defendant Stephanie Soyoung Choi.

130.    Plaintiff's lawyer defendant Stephanie Soyoung Choi told Plaintiff just come to Court.

131.    Plaintiff said "No, Plaintiff didn't do anything". "You, Defendant Stephanie Soyoung Choi are Plaintiff's lawyer, and Plaintiff's lawyer Defendant Stephanie Soyoung Choi should believe Plaintiff".

132.    Defendant Stephanie Soyoung Choi said, "Defendants, therapist Jane Doe and the new

12/38

employee Defendant Jane Doe are Defendant Stephanie Soyoung Choi's colleagues". "Defendant

Stephanie Soyoung Choi works with Defendant Jane Doe and Defendant Jane Doe every day, and

Defendant Stephanie Soyoung Choi believes Defendants Jane Doe and Jane Doe".

133.    Plaintiff tried to ask Defendant Fred Walker for help but Defendant Fred Walker

said,       "take care of it in Court". So Plaintiff got dressed quickly, left the program, got on a bus

and went to Court by Plaintiff's self. This was around 2:45 to 3:15 p.m.

134.    Plaintiff arrived at the Court around 4:00 to 4:30 pm. The Court was closed but Plaintiff

saw a Bailiff and told the Bailiff that Plaintiff was supposed to have Court.

135.    The Bailiff told Plaintiff " you know the Judge is going to remand you right"? Plaintiff said "

yeah". Bailff went inside the Court room and let the Court know, that Plaintiff was outside the

Courtroom.

136.    The Court called Plaintiff's lawyer Defendant Stephanie Soyoug Choi back because

Defendant Stephanie Soyoung Choi had already left for the day.

137.    Plaintiff got the Court to see Plaintiff where Plaintiff told the Court that Plaintiff's lawyer

Defendant Stephanie Soyoung Choi, and Defendant Fred Walker, Defendant Vania Quiroz,

Defendant therapist Jane Doe and new emplyee Defendant Jane Doe, were all lying because the

meds that Defendants say they trid to give to Plaintiff wouldn't arrive at the program till Monday

September 13, 2021.

138.    So there was no way they could have tried to give Plaintiff the medication that Plaintiff

had promised the Court Plaintiff would take.

139.    The Judge still remamnded Plaintiff back to L.A. County Jail on Sept. 9, 2021.

DENIAL OF FREE EXERCISE OF RELIGION

140.    The last month in a half that Plaintiff was at the program CCM, staff stopped

accommodating Plaintiff with Plaintiff's religious request.

141.    On orders of the Project Director Defendant Jane Doe, Plaimtiff was not to recieve any

more religious accommodations. For the last month in a half Plaintiff was not recieving his

medication and food on the sabbath day.

142.    On information and belief Plaintiff was receiving the same food as everybody else in the

13/38

program and Defendant Vania Quiroz called the Central Kitchen and told them just to write Kosher on the outside of the box because on some days, more than twice Plaintiff recieved pork chops and shrimp spaghetti. Also Plaintiff 's food looked the same as everybody else's.

## RETALIATION FOR FREE SPEECH /
## DENIAL OF ACCESS TO COURTS : INTERFERENCE

143.    On Oct. 22, 2021 Plaintiff put in a request form asking for a U.S.C. § 1983 civil complaint packet.

144.    Plaintiff recieved a response from Defendant Sgt. John Doe #471335 telling Plaintiff to call  the American Civil Libery's Union("ACLU").

145.    Plaintiff put in another request form on Nov.2, 2021 asking for a 1983 form.

146.    Plaintiff received an answer from a Defendant Sgt. John Doe #480627 and it was a U.S.C. 1983 civil complaint packet for the District of Arizona.

147.    On Dec. 29, 2021 Plaintiff put in a request form asking for a U.S.C. § 1983 civil complaint packet for the Central District of California and not the District of Arizona.

148.    Pakintiff received a a response from a Defendant Sgt. John Doe #600726 and it was a U.S.C. § 1983 civil complaint packet for the Nothern District of California.

149.    Plaintiff put n a inmate request form on Jan. 21, 2022 asking for a U.S.C. § 1983 civil complaint packet for the Central District of California and not the Northern District of California.

150.    Plaintiff received a response from a Defendant Sgt. John Doe #471335 and it was a U.S.C. § 1983 civil complaint packet for the Northern District of California.

151.    On Feb. 3, 2022 Plaintiff called the ACLU and complained that Defendants Sgt. John Doe #471335, Sgt. John Doe #480627, and  Sgt. John Doe #600726 don't want to give Plaintiff the correct complaint forms.

152.    ACLU responded by telling Defendants Sgt. John Doe #471335, Sgt.John John Doe # 480627 and Sgt John Doe #600726 to give Plaintiff the correct forms.

153.    Defendant Sgt. John Doe # 453023 responded, "Twin Towers Correctional Facility's Legal Unit does not provide these forms. Plaintiff needs to ask his lawyer or family to mail Plaintiff the

14/38

forms.

154.    Plaintiff appealed the response on Feb 9, 2022 stating that Defendants have given Plaintiff these forms before just for the wrong District. So, yeah TTCF's Legal Unit does give these forms out

155.    On Mar. 15, 2022 Plaintiff put in a request form asking if Plaintiff can get a list of the contents of the Law Library and also if Plaintiff can be let to use the Law Library.

156.    On Mar. 16, 2022, Plaintiff put in a Inmate Request form asking for a U.S.C. § 1983 complaint form and a 28 U.S.C. § 1915 IFP form.

157.    Plaintiff wrote on the request form that Defendants have a duty in helping Plaintiff with legal assistance in bringing suits in accordance with the findings in Bounds v. Smith. Plaintiff did not receive a response.

158.    On Apr. 24, 2022 Plaintiff put in a grievance form stating that Plaintiff had not recieved a response to Plaintiff's inquiry about being let in to use the Law Library.

159.    Plaintiff aslo stated that Plaintiff had asked Defendant Sgt. Jane Doe if Plaintiff could use the Law Library and Defendant Sgt. Jane Doe stated that the Law Library is only for Pro Per inmates fighting their criminal cases.

160,    On May 24, 2022 Plaintiff appealed the grievance from Apr. 24, 2022 with Plaintiff's own paper and with out receiving a reponse because Plaintiff did not want to waive Plaintiff's right to appeal by not responding.

161.    Plaintiff stated that the Courts have said that County Jails may not have a big Law Libray as State Prisons do but they must provide some access to legal material. Plaintiff then cited case law, Penland v. Warren County Jail, et al.

162.    On Jun. 16, 2022 Plaintiff submitted an Inmate Request form asking for a 42 U.S.C. § 1983 form for the Central District of California.

163.    Plaintiff received a response from Defendant Sgt. John Doe telling Plaintiff to call ACLU.

MEDICAL MALPRACTICE / NEGLIGENCE / DELIBERATE INDIFFERENCE /

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS /

RETALIATION FOR FREE SPEECH

15/38

164.   On Sept. 9, 2021 Plaintiff saw a Psychiatrist Defendant Jane Doe at "Window 2" in room "A" at Medical -Processing- on the first floor where Plaintiff asked about Plaintiff's medication. And if Plaintiff would be getting Plaintiff's usual meds of Seraquel at 300 mg's.

165.   The Psychiatrist told Plaintiff that Plainitff wouldn't get Plaintiff's meds until the Defendant Psychiatrist Jane Doe called the last place Plaintiff was at so Plaintiff can take the meds they were giving Plaintiff there.

166.   On Sept. 21, 2021 Plaintiff put in a Grievance form stating that Plaintiff had been 12 days without Plaintiff's psychotropic medication.

167.   On information and belief, because I don't remember exacly, but Plaintiff did not receive Plaintiff's medication for around thre (3) weeks to one (1) month and a week later.

168.   On Sept. 23, 2021 Plaintiff put in a Grievance form because Defendant Nurse Jane Doe denied Plaintiff and "egg create" mattress for Plaintiff's injured lower back, by Defendant Nurse Jane Doe who stated that they only give those mattresses to inmates with canes and wheel chairs.

169.   When Plaintiff's back hurts Plaintiff can't sleep and Plaintiff cant walk.

170.   Plaintiff also asked Defendants, Correctional Health Services "CHS" for Melatonin because Plaintiff could not sleep without Plaintiff's psychotropic medication and Plaintiff was told to wait for the Doctor.

171.   On Feb. 25, 2022, Plaintiff saw that Plaintiff was getting three (3) abscesses, giant pimples that get to the size of about a quarter cent piece and filled with puss.

172.   Plaintiff had gotten them before, didn't go to urgent care quickly enough and Plaintiff suffered alot and was now scarred.

173.   Plaintiff told Defendant Deputy John Doe, and coincidentally Defendant nurse Jane Doe was on the floor and Defendant Deputy John Doe told Defendant nurse Jane Doe that Plaintiff had abscesses growing.

174.   Defendant nurse Jane Doe said she would check Plaintiff's chart, and ruturn, and Defendant Deputy John Doe told Plaintiff to wait for Defendant nurse Jane Doe, but Defendant nurse Jane Doe never returned.

175.   Plaintiff asked again to be taken to Urgent Care, but Plaintiff wasn't taken this was

16/38

Friday morning Feb. 25, 2022.

176.    Plaintiff could not go on Friday night or all of Saturday because of Plaintiff's religious day the Sabbath.

177.    But when Plaintiff got off the Sabbath Plaintiff asked Defendants, all who were there in TTCF floor 271 on Feb. 26, 2022, but Defendants kept telling Plaintiff, "later, later". By then Plaintiff's meds had made Plaintiff to sleepy to wanna go.

178.    Plaintiff slept only on Plaintiff's right side of the body and Plaintiff was in pain.

179.    Plaintiff woke up Sunday Feb. 27, 2022 in pain and asked Defendant Deputy John Doe if he could take Plaintiff to Urgent Care A.S.A.P.

180.    Defendant Deputy John Doe said he would talk to the nurse, see what the nurse would say, then Defendant Deputy John Doe would see what's up.

181.    Plaintiff was in pain. The abscesses were about the size of a nickel to a quarter cent size piece and filled with puss.Plaintiff was in severe pain.

182.    Plaintiff had been previously told by Urgent Care staff to go right away to Urgent Care if Plaintiff saw that Plaintiff was getting an abscess.

183.    Plaintiff had three (3) abscesses and Plaintiff was in need of medication and a Doctor.

184.    Plaintiff asked Defendant Deputy John Doe and Defendant nurse Jane Doe Friday morning. Plaintiff asked Defendants Deputy John Doe, Deputy John Doe and Deputy JohnDoe Saturday night and Defendant Deputy John Doe and defendant nurse Jane Doe Sunday morning.

185.    Defendant nurse Jane doe said Plaintiff had an order for wound care and that Defendant nurse Jane Doe calls Plaintiff every morning for the last two (2) weeks and that Plaintiff doesn't come to the door.

186.    But on floor 271 a different nurse does pill call. Defendant nurse Jane Doe is lying becasue a different nurse does pill call everyday. There is no "regular" or specific nurse assigned to work floor 271.

187.    Plaintiff told Defendant nurse Jane Doe about the adscesses and Defendant nurse Jane Doe said that she, Defendant nurse Jane Doe, would be back.

188.    Defendant nurse Jane Doe came back and did wound care even though Plaintiff's

17/38

PLEADING PAGE FOR A COMPLAINT

abscesses had not ruptured or bursted yet.

189.    Plaintiff asked to go to Urgent Care but Defendant nurse Jane Doe said that if Defendant nurse Jane Doe takes Plaintiff to Urgent Care they, the other staff at Urgent Care , would be mad at Defendant Jane Doe.

190.    Plantiff was in pain and Plaintiff still hadn't seen a Doctor or received any meds.

191.    Late Sunday afternoon Plaintiff was taken to Urgent Care by Defendant Deputy John Doe.

192.    Plaintiff was told by CHS staff that Plaintiff would receive topical cream and medicated soap and that Plaintiff should wait till one (1) of the abscesses ruptures or bursts to have a "culture" test done to see whats causing these abscesses to grow. Plaintiff was not prescribed anti-biotics. This was Sunday Feb. 27, 2022 at apprx. 5:00 pm.

193.    On Mar. 1, 2022 Plaintiff had a ruptured and leaking abscess a little bit bigger than a nickel in size on Plaintiff's left pectoral, which also had a puss sack inside  about the size of a bean or a pea.

194.    Defendants nurse Jane Doe and nurse Jane Doe did not want to do wound care. Both defendants nurse Jane Doe and nurse Jane Doe did not want to clean it or dress it.

195.    Plaintiff had to convince Defendant Deputy John Doe to take Plaintiff to Urgent Care so the wound could be cleaned and dressed.

196.    The Defendant responsible for the wound care order, made it so no gauzes would be used to cover the wound. It was to be left open and no tripple antibiotic ointment was to be used. That's what Defendants nurse Jane Doe and nurse Jane Doe told Plaintiff.

197.    On Mar. 3, 2022 Plaintiff called ACLU and made a complaint of the inccident that occured on Feb. 25, 2022. On or around this same time Plaintiff had an abscess on the back of Plaintiff's neck open. Plaintiff remembered to ask to be taken to Urgent Care to have the "Culture" test done.

198.    On Mar. 6, 2022 Plaintiff filled out a sick call slip requesting to see a Dermatologist for the abscesses Plaintiff kept getting.

199.    Plaintiff believed it was a MRSA("STAPH") infection. Plaintiff also asked for cream and Hydrocortizone for itchy red skin.

200.    On Mar. 10, 2022 Plaintiff received a response to the complaint Plaintiff had filed on the

the Defendants thru the ACLU.

201.    The comments from the grievance response were from a Defendant Sgt. John Doe #453023, stating that Plaintiff was offered medical attention at the time of the filing of the grievance and again on Mar. 7, 2022 and both times Plaintiff had refused.

202.    Plaintiff appealed the grievance and stated that Plaintiff had been asking to go to Urgent Care since the very morning for two (2) days and was finally taken till Sunday afternoon around 5:00 pm.

203.    By Monday morning Plaintiff had eight (8) abscesses. Plaintiff let Defendants know the urgency of the medical need and it was disregarded by all Defandants stated herin above.

204.    By Mar. 14, 2022 Plaintiff still hadn't received the results of the "Culture" test done about two (2) weeks prior.

205.    On Mar. 25, 2022 Plaintiff again had abscesses groing on Plaintiff's body. Plaintiff was taken to Urgent Care where Plaintiff remembered to ask for the results of the "Culture" test. Plaintiff was told that the abscesses were small growths of MRSA("Methicillin-Resistant-Staphylo-coccus--Aureus")

206.    On Apr. 21, 2022 after two (2) weeks of nothing medical staff came to do wound care on Plaintiff's back. After Plaintiff's back was healed and Plaintiff didn't need it anymore.

207.    On Apr. 25, 2022 Plaintiff put in a sick call slip stating that Plaintiff's skin burns and itches all over and that Plaintiff would like to see a Doctor or Dermatologist A.S.A.P.

208.    On Apr. 27, 2022 Plaintiff put in a sick call slip stating that Plaintiff had talked to Defendant nurse Jane Doe about Plantif's skin itching and burning all over.

209.    Defendant nurse Jane Doe tolf Plaintiff that Defendant nurse Jane Doe would prescribe Plaintiff medicated shampoo, Eucerin Cream and Hydrocortizone.

210.    The following morning during pill call Plaintiff asked for Plaintiff's prescriptions and the pill call nurse told Plaintiff that Plaintiff did not have medicated shampoo. That she , the pill call nurse, did not have the Eucerin cream and only gave Plaintiff a pea-sized amount of Hydrocorti-zone.

19/38

211.   On Apr. 28, 2022 Plaintiff's skin burns and itches. Plaintiff has scratches that are cuts on the back of Plaintiff's neck, Plaintiff's back, forehead, and under Plaintiff's hair and beard, abdomen and chest.

212.   Plaintiff has scratches that are cuts from Plaintiff scratching.

213.   Later Plaintiff found out because Plaintiff asked Defendant nurse Jane Doe, that she, Defendant nurse Jane Doe, prescribed medicated shampoo Mondays and Fridays only.Plaintiff would have to wait four (4) days to to get the medicated shampoo.

214.   Defendant nurse Jane Doe prescribed Eucerin Cream but it is out of stock and /or there is a shortage and a pea sized amount of Hydrocortizone for my entire body. Plaintiff suffered a lot.

215.   Plaintiff was told at Urgent Care that Plaintiff would be put on the doctors line to see the Doctor. Plaintiff was also told that Plaintiff would be put on the Dermatologists' line. Plaintiff never saw either.

216.   On Apr. 28, 2022 at apprx. 4:00 pm. Defendants Deputy John Doe came to Plaintiff's door to talk to Plaintiff to tell Plaintiff that Plainitff had a date to see the Doctor in May 17, 2022.

217.   Defendant Deputy John Doe told Plaintiff to give the pink copy of the grievance Plainitff put in so Defendant Deputy John Doe could give it to Defendant Sgt. Jane Doe, because it was the wrong form.

218.   Defendant Deputy John Doe told Plaintiff that what Plaintiff needed to fill out was a request form, which is incorrect. To see the Doctor an inmate must fill out a sick call slip, like Plaintiff has been doing.

219.   Plainitff told Defendant Deputy John Doe that it was a grievance because Plaintiff has been asking for a long time to see the Doctor/Dermatologist.

220.   On Apr. 28, 2022 Plaintiff put in a grievance against Defendant nurse Jane Doe for prescribing Medicated shampoo Mondays and Fridays only and a pea sized amount of Hydrocortizone. and for the lack of and shortage of Eucerin Cream.

221.   Plaintitff put in an appeal with Plaintiff's own paper on May 24, 2022 because Plaintiff did not receive a response to Plaintiff's grievance.

222.   On Apr. 28, 2022 plaintiff put in a grievance about not haven't seen a Doctor or a Derma-

20/38

since Plaintiff has been asking and since Plaintiff began getting abscesses multiple different times. A span of about three month's.

223.    Plaintiff appealed any decision with Plaintiff's own paper on May 24, 2022 because Plaintiff did not receive a response to Plaintiff's grievance and Plaintiff did not want to waive Plaintiff's right to appeal by not responding.

224.    As of May 24, 2022 Plaintiff did not get called to see the Doctor or Dermatologist like Defendant Deputy John Doe said. Plaintiff still had not ssen any Doctors or been prescribed any medication for Plaintiff's skin problem.

RETALIATION FOR FREE SPEECH / INEFFECTIVE COUNSEL /
FALSE IMPRISONMENT / INTENTIONAL INFLICTION OF
EMOTIONAL DISTRESS

225.    After being remamnded back to jail, Plaintiff had a Court date back in ODR Court(Office of Diversion and Reentry) on Oct. 20, 2021 to see if Plaintiff wanted to return to the program.

226.    At first Plaintiff did want to return to the program so Plaintiff could be out and make it to Plaintiff's meeting with ICE. But after careful consideration Plaintiff decided to get out of the Program and go back to fighting Plaintiff's criminal case. Plaintiff did not want to go back to program because of all the things Defendants in the progarm did and were doing to Plaintiff.

227.    Plaintiff got out the program wan was sent back to Norwalk Superior to fight Plaintiff's case.

228.    Plaintiff went to Plaintiff's first court date back in Norwalk on or around mid December 2021.

229.    Plaintiff's lawyer in Norwalk told Plaintiff to go back to the program, but Plaintiff was firm and sure that Plaintiff did not want to go back to the program, so Plaintiff's lawyer told Plaintiff that she, Plaintiff's lawyer, would have Plaintiff eveluated for competency over at Hollywwod Court.

230.    On Jan. 11, 2022 Plaintiff thought Plaintiff was going to Norwalk Superior Court but it was Hollywood Court.

231.    Plaintiff asked a Deputy if Hollywood Court was competency Court and the Deputy said "yeah".

232.    At Hollywood Court while in the waiting tank Plaintiff mentally went over Plaintiff's competency treatment papers that had been given to Plaintiff by another inmate who had just got back from the hospital for competency treatment.

233.    Plaintiff finally got called and Plaintiff saw an Asian woman, a Doctor.

234.    She, the Doctor, asked Plaintiff questions and Plaintiff answered them truthfully.It all took about 10 minutes.

235.    The Doctor finished with the questions and Plaintiff asked if everything was alright to see if the Doctor was gonna find Plaintiff competent.

236.    The Doctor said "yeah, I'm just going to turn my report in to the Court".

237.    Five (5) minutes later in the elevator on the way down a male Deputy said to Plaintiff, "They found you competent. You will be returning to your criminal Court tommorrow morning".

238.    The next day they didn't call Plaintiff for Court, and on the second day Plaintiff gave Deputies a kite asking for Plaintiff's next court date.

239.    The kite came back with a date of Feb. 16, 2022 in Hollywood Court,

240.    Plaintiff was asking self why does Plaintiff have another Court date in Hollywood Court?

241.    At Hollywood Court Plaintiff again started going over Plaintiff's competency treatment mental notes.

242.    Plaintiff was taken upstairs to Dept. 213 , where Plaintiff waited for forty-five (45) minutes. Then Plaintiff was called to the lawyer/client privacy booth.

243.    There Plaintiff met Defendant Parker Shea Sampson, but Plaintiff didn't know it because Defendant Parker Shea Sampson didn't introduce her self and she just started talking to Plaintiff.

244.    Plaintiff thought Defendant Parker Shea Sampson was a Doctor.Defendant Parker Shea Sampson asked Plaintiff to tell Defendant Parker Shea Sampson what had happened and so Plaintiff did.

345.    How Plaintiff didn't do anything to the supposed victim, Defendant Angela Hernandez.

246.    Then Defendant Parker Shea Sampson asked Plaintiff, "What's your defense"?

247.    Plaintiff said "the woman, the victim, Defendant Angela Hernandez is lying".

248.    Then Defendant Parker Shea Sampson asked Plaintiff "Why would she, the victim,

22/38

**PLEADING PAGE FOR A COMPLAINT**

Defendant Angela Hernandez lie"? PLaintiff said "So they, Defendants HPPD, could take Plaintiff to jail".

249. Then Defendant Parker Shea Sampson said, "Sorry bout all this, but it's ging to take a couple of weeks for me to write my report".

250. When Plaintiff asked if Defendant Parker Shea Sampson was going to find Plaintiff competent, Defendant Parker Shea Sampson responded with "Plaintiff is gonna get credit for all this time". " I think you know what's going on with your case, you understand, you probably are".

251. Then Defendant Parker Shea Sampson asked Plaintiff, "Is there anything Plaintiff wants me to prescribe for Plaintiff"? Plaintiff said "No, Plaintiff is already getting everything Plaintiff needs".

252. Plaintiff left with the words " I think you understand what's going on, I think you probably are" in Plaintiff's mind.

253. Since Plaintiff didn't know that Plaintiff had already met Plaintiff's Public Defenders lawyer Defendant Parker Shea Sampson, Plaintiff began Calling Hollywood Court.

254. Plaintiff called to see if the person/doctor Plaintiff saw on Feb. 16, 2022 found Plaintiff competent and if not so Plaintiff can try to get a second opinion.

255. Plaintiff called but the secretary didn't know, but what the secretary did know was Plaintiff's next court date, which ws Mar. 16, 2022 and that Plaintiff's Lawyers name was Defendant Parker Shea Sampson.

256. Plaintiff asked the secretary if she could transfer Plaintiff and the secretary did and Plaintiff left Defendant Parker Shea Sampson a message.

257. Plaintiff said "Hi, my name is Oscar Gonzalez booking No.6245108 and Case No.VA153097 and I wanted to tell you Defendant Parker Shea Sampson that in case I'm found incompetent to stand trial I would like a second opinion because I'm trying to get back to fighting my criminal case A.S.A.P. and hung up.

258. Plaintiff did not hear from Defendant Parker Shae Sampson at all after that.

259. On Mar. 14, 2022 around 11:00 am Plaintiff was called to the pod door It was a male Asian a Dr. Chris Chang here to evaluate Plaintiff for competency.

23|38

260.   Dr. Chris Chang drilled Plaintiff for an hour telling Plaintiff that Plaintiff didn't remember what happened the day of the incident and that Plaintiff should just take a deal.

261.   Plaintiff told Dr. Chang that Plantiff wasn't going to tkae a deal and have it go on Plaintiff's record for something Plaintiff didn't do.

262.   Dr. Chang kept playing the role of lawyer and Doctor

263.   On information and belief Defendant Parker Shea Sampson told Dr. Chang what to do and what to say. The way Dr. Chang acted and what Dr. Chang siad came from Defendant Parker Shea Sampson.

264.   Plaintiff found out later after Plaintiff called Defendant Parker Shea Sampson and told Defendant Parker Shea Sampson that Plaintiff wanted a second opinion, which in fact would actually be a 3rd opinion.

265.   Plaintiff told Defendant Parker Shea Sampson that Plaintiff wanted to do a video conference because Plaintiff wanted to talk about Plaintiff's case.

266.   Defendant Parker Shea Sampson video conferenced Plaintiff and that's when Plaintiff found out the person Plaintiff saw on Feb. 16, 2022 wasn't a Doctor but Plaintiff's lawyer Defendant Parker Shea Sampson

267.   Plaintiff told Defendant Parker Shea Sampson that Dr. Chang had drilled Plaintiff for an hour telling Plaintiff that Plaintiff didn't remember what happened the day of the incident.

268.   Dr. Chang drilled Plaintiff until Plaintiff got upset then Dr. Chang found Plaintiff incompetent but told Plaintiff that Plaintiff could get another opinion.

269.   Defendant Parker Shea Sampson wanted to start talking about medications but Plaintiff told Defendant Parker Shea Sampson that Plaintiff wanted another opinion.

270.   Then Plaintiff told Defendant Parker Shea Sampson that Plaintiff has a copy of the competency treatment papers and that Plaintiff goes over them everyday and that Plaintiff knows all the answers to all the questions.

271.   Defendant Parker Shea Sampson said, "I don't doubt Plaintiff knows the numbers, it's Plaintiff's rationale I'm worried about. Plaintiff is focusing on one (1) little flower and there is a forrest full of flowers and Plaintiff could be deported and it will go on Plaintiff's record".

24/38

PLEADING PAGE FOR A COMPLAINT

272.   Defendant Parker Shea Sampson gave Plaintiff five (5) or six (6) reasons why Plaintiff should take a deal or take a program but not take Plaintiff's case to trial.

273.   Plaintiff was found incompetent and "IS" incompetent because Plaintiff won't take a deal or go to a program and wants to take Plaintiff's criminal case to trial.

274.   Defendant Parker Shea Sampson has been threatning to send Plaintiff to the hospital as incompetent if Plaintiff doesn't agree to take a deal or go to a program.

275.   After Plaintiff made a legal threat to the victim Defendant Angela Hernandez publicly on social media.

276.   The victim Defendant Angela Hernandez and the witness in Plaintiff's criminal case did not show up to the preliminary hearing in Plaintiff's criminal case.

277.   On Mar. 18, 2020 Plaintiff was put in handcuffs and sat on the sidewalk.

278.   A police officer came over to the Defendant HPPD Sgt, John Doe who was standing behind Plaintiff and said, "Sarge, she the victim, Defendant Angela Hernandez, does not want to go thru with this".

279.   The investigator my first Public Defender lawyer Defendant Michael Javier Solis sent to talk to Defendant Angela Hernandez came back with a different report than the report police had.

280.   She didn't reaffirm what was in the police report. Instaed all Defendant Angela Hernandez said was that, she Defendant Angela Hernandez, knew that Plaintiff looked like Plaintiff might need some help.

281.   Plaintiff at the time thought there is a high probability Defendant Angela Hernandez won't show up to court because of all these things coupled with the fact that Plaintiff really hadn't done anything to be imprisoned, which is why Plaintiff wanted to take Plaintiff's case to trial.

282.   On or around Mar. 21, 2022 Plaintiff and Defendant Parker Shea Sampson agreed on a 3rd opinion.

283.   Around the same time Plaintiff went to Hollywood Court and Defendant Parker Shea Sampson told the Judge, Judge Robert Owens Kaye, that Plaintiff wanted another opinion.

284.   Judge Robert Owens Kaye agreed and Plaintiff was to be evaluated by another Doctor. A female Doctor with the same last name "Chang".

25/38

285.   Plaintiff waited for the evaluation but it never came.

286.   On may 25, 2022 Plaintiff had video court and was found incompetent by the report taken on Mar. 14, 2022 by a Dr. Chang and was sentenced to a State Hospital for Competency treatment.

287.   Because of the actions of Defendant Parker Shea Sampson Plaintiff spent more time in jail. Apprx. one (1) year from Jan. 11, 2022 to Jan. 30, 2023.

DENIAL OF DUE PROCESS

289.   Plaintiff was found incompetent May 25, 2022 and wasn't picked up by the Defendants State Hospital employees Defendants John / Jane doe till Oct. 3, 2022.

290.   Plaintiff waited to be transfered to the hospital for four (4) months in county jail.

FIRST AMENDMENT RIGHT VIOLATION DENIAL OF FREE SPEECH

AND THE RIGHT TO CONSULT WITH AN ATTORNEY

291.   Plaintiff was sent a letter from the Law Offices of Yagman & Reichmann in the same letter to another inmate a John Hutchins Inmate No. 6352463

292.   The letter was sent on Apr. 23, 2022 and had a deadline "SEND BACK NO LATER THAN" date of May 9, 2022.

293.   Plaintiff recieved the letter May 25, 2022.

294.   It took Defefendant Deputy John Doe, who works "legal mail" one (1) month to get it to Plaintiff.

295.   Plaintiff filed a grievance because Plaintiff missed the deadline because of the lateness of the letter getting to Plaintiff.

296.   Plaintiff appealed any response with Plaintiff's own paper, because Plaintiff did not receive a response to Plaintiff's greivance, with in the alotted time frame because Plaintiff did not want to waive Plaintiff's right to appeal by not responding and the date was Jun. 14, 2022.

297.   Plaintiff was sent mail from the Clerks Office of the U.S. Court House.

298.   The mail arrived in the "mail room" Jul. 7, 2022 but Plaintiff did not receive it until Aug. 11, 2022 which was one (1) month later.

26/38

### RETALIATION FOR FREE SPEECH / DENIAL OF DUE PROCESS

299.    On Feb. 10, 2022 Plantiff called the ACLU and complained that for the last five (5) weeks Plaintiff has been getting clean clothes once a week only and it's usually twice a week, Mondays and Thursdays and Plaintiff has gotten clean clothes on Mondays only.

300.    Plaintiff received a response to Plaintiff's greivance on Feb. 17, 2022 from a Defendant Sgt. John Doe stating that clothing exchanbe is twice a week and that if Plaintiff needs clean clothes beforehand Plaintiff can ask custody personnel.

301.    Plaintiff appealed the greivance and stated that Plaintiff already knows clothing exchange is twice a week and that Deputies working TTCF floor 271 will only give out clean clothes in case of an emergency like somebody urinating on themselves and that other than that it's one (1) set of clothing per inmate.

302.    On May 2. 2022 Plaintiff put in a grievance stating it has now been 4 months where Plaintiff only get's clean clothes once a week and that Plaintiff would like to know the reason behind it, is it retaliation for writing grievances or is it something else.

303.    Plaintiff did not receive a response to Plaintiff's grievance, so Plaintiff filed an appeal with Plaintiff's own paper on May 24, 2022 where Plaintiff stated that it's usually on Mondays only now but the last three (3) weeks it's been Monday then again Wednesday or Thursday the following week and that that's almost two (2) weeks wait time for clean clothes.

### RETALIATION FOR FREE SPEECH / ILLEGAL SEARCH / HARRASSMENT

304.    Plaintiff called the ACLU and complained that on Feb. 21, 2022 Plaintiff along with the rest of the pod was taken out to rec yard and strip searched.

305.    No inmate had come from another jail, no inmate had a contact visit, no inmate had come or left the pod and no inmates had gone to Court.

306.    Defendant female Sgt. Jane Doe who called for the strip search reason for it was Plaintiff and other inmates had too much clothes(boxers,socks,and shirts) hanging on the railings.

307.    Plaintiff and all other inmates had not smoked or done any drugs and the pod did not smell like smoke or anything else to give Defendant female Sgt. Jane Doe  probable cause to do a strip search and it felt retaliatory, malicious, and unjustified.

27/38

308.   Plaintiff received a response later on from a Defendant Deputy Sgt. John Doe #620035 stating that the investigation of Plaintiff's grievance cannot be completed and will be on "LATE-STATUS" because the investigation is ongoing.

309.   Plaintiff did not receive a response to the grievance and so on Mar. 20, 2022 with Plaintiff's own paper Plaintiff filed an appeal because Plaintiff did not want to waive the right to appeal by not responding.

310.   On Jun. 2, 2022 Plaintiff and all other inmates in the pod with Plaintiff were again taken out to rec yard and strip searched.

311.   Plaintiff's pod was on quarantine, which means no movement whatsoever. Again Plaintiff and the entire pod had not given Defendant Sgt. John Doe any probable cause to take Plaintiff and all other inmates to rec yard and have Plaintiff and all others strip searched

312.   Plaintiff asked Defendant Sgt. John Doe what was the reason behind the strip search and both times Defendant Sgt. John Doe evaded the question with, "We'll tell you later".

313.   Plaintiff filed a grievance the very same day Jun. 2, 2022 but Plaintiff never received a response

314.   Plaintiff filed a greivance appeal on Jun. 22, 2022 with Plaintiff's own paper.

DENIAL OF FREE EXRCISE OF RELIGION / DENIAL OF DUE PROCESS

315.   On Oct. 21, 2021 Plaintiff put in a complaint with ACLU about Plaintiff not being able to receive commissary like all other inmates because of Plaintiff's religion, namely the Sabbath.

316.   The Sabbath starts on Friday night and ends one (1) hour after sunset on Saturday night.

317.   From October to about May the sunsets early not letting Plaintiff receive commissary during these months unless Plaintiff breaks Plaintiff's religious beliefs.

318.   Commissary comes from anywhere between 6:30 to 7:30 pm on Fridays and the bubble sheets that have to be filled out and turned in to order commissary are turned in on Thursday and commissary comes on Friday.

319.   Because of that Plaintiff asked if bubble sheets can be turned in Wednesday night for commissary Thursday night so Plaintiff can get commissary like all other inmates.

320.   Plaintiff received a response to Plaintiff's grievance on Nov. 3, 2021 stating that the

28|38

Rabbi said that purchases couldn't be made on the Sabbath and the money transaction occured Thursday night so there was no violation under Jewish law but Plaintiff stated that Plaintiff was not Jewish.

321.    The Defendant that gave Plaintiff the response to Plaintiff's grievance a "Senior" Deputy stated to Plaintiff that the Los Angeles Sheriff's Department LASD had a contract with Keffee Commissary and that they wern't going to change it for one (1) person.

322.    Because of that Plaintiff did not receive commissary from October 2021 to May 2022 and again from February 2023 to April 2023.

323.    On Apr. 19, 2022 Plaintiff wrote a kite to a Deputy Tidwell stating that the week before on a Sabbath day, a day Plaintiff does not come out of Plaintiff's cell, was given Plaintiff's breakfast, and lunch together with Plaintiff's dinner and that Plaintiff did not eat all day and it's not a fast day.

324.    On Apr. 21, 2022 Deputy Tidwell told Plaintiff that "Food Services" was gonna give Plaintiff breakfast & lunch together at lunch time.

325.    This was the week of Passover and Plaintiff is supposed to get Plaintiff's food at it's appointed time because Plaintiff can't eat just anything for Passover.

326.    On Apr. 21, 2022 Plaintiff did not receive breakfast or lunch at their apponted times .Plaintiff got breakfast and lunch at 1:30 pm.

327.    On Apr. 24, 2022 Plaintiff got breakfast and lunch together at lunch time.

328.    On May 3, 2022 Plaintiff did not receive a lunch.

329.    On May 5, 2022 Plaintiff did not receive a lunch so Plaintiff gave a kite to the inmate workers with Plaintiff's info so they could try thru Deputies to get it.

330.    Defendants Deputy John Doe was doing a security check and Plaintiff also gave Defendant Deputy John Doe a kite with Plaintiff's info so Defendant Deputy John Doe can order it.

331.    Defendant Deputy John Doe told Pliantiff that Defendant female Deputy Jane Doe had ordered it.

332.    But both Defendant Deputies, John Doe and Jane Doe did no more security checks or came back.

333.    Plaintiff asked Defendant Deputy John Doe but Defendant Deputy John Doe said that

29/38

food services would not give it to Defendant Deputy John Doe because lunch had already passed. It was only 11:00 am, and lunch is between 11:30 am and 12:30 am.

334.    Plaintiff told Defendant Deputy John Doe That it was still early and that there was still time and that other Deputies had gotten Plaintiff's lunch at this time before.

335.    Defendant Deputy John Doe said "No", and that food services isn't going to do it.

336.    On May 11, 2022 Plaintiff received regular bread in Plaintiff's lunch instead of ther Kosher bread that the "Kosher" diet is supposed to come with.

337.    On May 12, 2022 Plaintiff did not receive Plaintiff's Dinner. Plaintiff's Kosher diet dinner.

338.    Plaintiff asked a Deputy If he, the Deputy, could call food services and order Plaintiff's dinner.

339.    The Deputy told Plaintiff that Defendants John or Jane Doe who work food services told the Deputy that Defendants John or Jane Doe who work food services had delivered Plaintiff's dinner to another floor and that they couldn't send Plaintiff another one.

340.    Plaintiff ate peanut butter and jelly.

341.    On May 26, 2022 Plaintiff did not get Plaintiff's lunch. Plaintiff gave Deputy Tidwell a kite with Plaintiff's info and Plaintiff still did not get a lunch.

342.    On May 27, 2022, again Plaintiff did not get Plaintiff's lunch and Plaintiff tried to give Defendant Deputies  John Doe and John Doe a kite to give to Deputy Tidwell but both Defendant Deputies John Doe and John Doe did not want to take the kite.

343.    On May 28, 2022 Plaintiff did not get Plaintiff's lunch.

344.    Plaintiff gave Defendant Deputy John Doe a kite with Plaintiff's info (name and booking number) and Plaintiff still did not get Plaintiff's lunch.

345.    On Jun. 15, 2022 Plaintiff got milk that was not marked Kosher In Plaintiff's Kosher breakfast sack.

346.    On Jun. 16, 2022 Plaintiff again got milk not marked Kosher in Plaintiff's Kosher reakfast sack.

347.    On Jun. 19, 2022 Plaintiff received Plaintiff's Kosher breakfast sack with a milk not marked Kosher and It wasn't the milk Plaintiff usually receives with Plaintiff's Kosher breakfast.

30/38

RETALIATION FOR FREE SPEECH / INEFFECTIVE COUNSEL / INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS / FALSE IMPRISONMENT

348.    Starting Jan. 11 2022 to May 25, 2022 Plaintiff was in competency Court.

349.    Plaintiff was found competent Jan. 11, 2022, then incompetent Mar. 14, 2022, then on May 25, 2022 was pronounced "incompetent" by the Court with out a 3rd and decisive evaluation.

350.    Jun. 21, 2022 Plaintiff found out the order to subject Plaintiff to "involuntary" medication was a collateral order that Plaintiff could appeal if Plaintiff so chose to.

351.    Plaintiff called Plaintiff's lawyer Defendant Parker Shea Sampson, with in time, and told her how and what to say to appeal the order to subject Plaintiff to involuntary medication.

352.    Defendant Parker Shea Sampson said, "No, it's not a collateral order than can be appealed, and  that "that was simply the law".

353.    Defendant Parker Shea Sampson ended with "I'm not going to do it", and Plaintiff never heard from Defendant Parker Shea Sampson again.

DENIAL OF FREE EXCERCISE OF RELIGION

354.    Plaintiff was picked up byPatton State Hospital Oct. 3, 2022 and was there till Jan. 30, 2023.

355.    During Plaintiff's time at the hospital Plaintiff was not allowed to practice Plaintiff's religion the way it's required to be precticed.

356.    Plaintiff was not allowed to do the Sabbath day the way Plaintiff is supposed to do it and also was not on a proper Kosher diet.

357.    Plaintiff "WAS" on the Kosher diet but State Hospital Food Services did not know what they were doing with the food there.

358.    Defendants, food services workers, Jane Doe's and John Doe's would think that chicken was Kosher just because it's chicken and that's incorrect, also Defendants, food services workers, would try to give Plaintiff Chicken cheese pizza and pass it off as Kosher.

359.    In a Kosher diet meat and dairy aren't to be mixed, they are not supposed to be cooked together and the chicken must be bought at a market that's Kosher for it to be deemed Kosher.

360.    Plaintiff survived on protein "Shakes" that amounted to 440 calories for each meal.

31/38

**PLEADING PAGE FOR A COMPLAINT**

361.    Defendants, State Hospital Food Services workers, John Doe's and Jane Doe's had kosher T.V. dinners but Defendants only wanted to give them to Plaintiff one (1) time a day, evey other day, and had max calories of 330, while everybody else was eating full meals.

362.    On Oct. 5, 2022, Plaintiff asked Defendant Unit Supervisor"(U.S.")Jane Doe if Plaintiff can get a urinal because Plaintiff is not supposed to come out of Plaintiff's room on the Sabbath and Defendant U.S. Jane Doe denied Plaintiff the urinal, and this was in unit 30.

363.    On Oct. 11, 2022 Plaintiff had a meeting with Unit 77 staff Defendants John Doe's and Jane Doe's at Approx. 2:30 pm where U.S. Ray Thompson, told Plaintiff that it was a collective effort that, Defendant U.S. Ray Thompson and Defendants unit 77 staff John Doe's and Jane Doe's were not going to accomodate Plaintiff with Plaintiffs religious request.

364.    Even when Plaintiff pointed out to "de minimus" cost's solutions ( a urinal, that my meds and protein shakes be brought to Plaintiff's room on the Sabbath).

365.    On or around this same time Plaintiff called California Patient's rights and talked to an advocate Jelly Betancourt.

366.    The advocate told Plaintiff that staff could not bring food to Plaintiff's room citing "vector" protocols, event hough there was patients who had food stored in their rooms cause of canteen.

367.    The advocate also stated that it was up to the Dr. Defendant John Doe to give Plaintiff a urinal which the Defendant Dr. John Doe denied, even though there was other patieents who clearly had it for the same reason, to not have to get up at night and go all the way to the bathroom.

368.    The advocate proceeded to tell Plaintiff that Plaintiff's issue was not a patients right's issue.

369.    Plaintiff did not receive any "religious accomodations" while in Patton State Hospital.

370.    Palintiff suffered a lot, physically, mentally, and emotionally at Patton State Hospital.

371.    After Plaintiff passed Plaintiff's competency test, Plaintiff still got tested three (3) more times, till "rehab therapist" told the third Dr. that Plaintiff had already passed Plaintiff's competency test and that Plaintiff was waiting to return to L.A. County Jail to resume Plaintiff's criminal procee-dings.

372.    Plaintiff doesn't know the name or position of the Defenant(s) who kept testing Plaintiff to try to keep Plaintiff in Hospital Longer.

32/38

RETALIATION FOR FREE SPEECH / DENIAL OF FREE EXCERCISE OF RELIGION /

MEDICAL MAL PRACTICE / NEGLIGENCE / INTENTIONAL

INFLICTION OF EMOTIONAL DISTRESS

373.    Plaintiff returned to L.A. County Jail on Jan. 30, 2023.

374.    On Feb. 3, 2023 Plaintiff was put on the "low sodium" diet, which Plaintiff had not requested and had not been put on it before.

375.    Plaintiff put in a medical request form asking to be taken off of it because Plaintiff did not have high blood pressure and as long as Plaintiff was on the medical diet Plaintiff could not recieve the religious diet.

376.    It took one (1) month for Plaintiff to be called to see the Doctor from Feb. 15, 2023 to about Mar. 13, 2023  when Doctor Simmons, took Plaintiff off of the medical diet.

377.    Plaintiff is unsure which Defendant Doctor ordered that Plaintiff be put on a medical diet, but Plaintiff will add Defendant to the suit when the information is ascertained

378.    After being taken off the medical diet Plaintiff had just two (2) weeks to apply for the religious diet and for the proper departmennt to approve the request and still three (3) to five (5) days after that to recieve it after it's been approved, and get it in time to celebrate "Passover" which was from Apr. 4, 2023 to Apr. 11, 2023.

379.    Plaintiff did not receive Plaintiff's religious diet and was not able to celebrate Passover properly.

380.    Plaintiff was released from custody on a court date Apr. 12, 2023 when a credit calculation determined that Plaintiff's alleged crimes carried a sentence of four (4) years two (2) months, Aprx. 1,700 days and Plaintiff had credit 1,972 days which meant Plaintiff was over by 272 days.

381.    Plaintiff had spent 272 days more in jail than Plaintiff's alleged crimes carried.

382.    Plaintiff served the full sentence of the alleged crimes plus 272 days.

383.    On or around June 2023 Plaintiff finally got to take Plaintiff's case to trial.

384.    June 2023 Plaintiff was found not guilty on all counts.

384.    The supposed victim Defendant Angela Hernandez, had convictions for attempted murder as well as two (2) assault charges, and Defendant Angela Hernandez's witness had convictions for

33/38

robbery as well as other felonies.

385.    On information and belief, because Plaintiff is not sure if she was the D.A. for Plaintiff's criminal case from the beginning, District Attorney Defendnant Deborah Anne Delport prosecuted Plaintiff's case and kept pushing for Plaintiff to be incarcerated and convicted when Plaintiff hadn't done anything.

NOTICE OF CLAIM FILED AS TO ALL STATE TORT CLAIMS

386.    The Plaintiff has filed the "Notice Of Claim" with respect to all state tort claims and informed the proper government agencies of Plaintiff's intent.

CLAIMS FOR RELIEF

387.    The actions of defendants Hernandez, Betancourt, Delport, Solis, Sampson, Choi, Doe, Doe, Quiroz, Doe, Doe, and Doe in lying, detaining and encarcerating Plaintiff with no justification and or real cause constitutes the tort of false imprisonment and intentional infliction of emotional distress.

388.    The actions of defendants Michael Javier Solis, Parker Shea Sampson, and Stepahnie So-young Choi in not providing effective counsel and deliberately causing Plaintiff to stay in Jail longer constitutes ineffective counsel and impeding Plaintiff's defense in violation of the Sixth Amendment to the United States Constitution.

389.    The adverse reactions to Plaintiff's comments on socisl media by defendants Solis, Samp-son, Quiroz, Doe, Doe, Doe, Doe, Doe, Doe, Doe, Doe, Doe, Doe, and Doe constitute retaliation for free speech in violation of the First Amendment to the United States Constitution.

390.    The actions of defendanrs Quiroz, Doe, Doe, Doe and Choi in cruelly punishing Plaintiff by sabotaging, lying and incarcerating Plaintiff unjustly and with out cause constitutes cruel and unusual punishment in violation of the Eighth Amenement to the United States Constitution.

391.    The actions of defendants Doe, Walker, Doe, Doe, Doe, Thompson, Doe, Doe, Doe, Doe,

34/38

**PLEADING PAGE FOR A COMPLAINT**

Doe, Doe, Doe, Doe, Doe, Doe, Doe, Doe, Doe, Doe, Doe, Doe, Doe Doe, Doe, Quiroz, and Doe in preventing Plaintiff from satisfactorily practicing Plaintiffs religion constitutes a denial of free excercise of religion in violation of the First Amendment to the United States Constitution.

392.    The actions of Defendants Doe, Doe, Doe, Doe, Doe, Doe, Doe, Doe, Doe, and Doe in failing to treat Plaintiff when Plaintiff was clearly in pain and suffering due to a visible serious medical need constitites the tort of medical malpractice and negligence.

393. The actions of defendants Doe #453023, Doe #600726, Doe #480627, Doe #471335, Doe, and Doe in not assisting, interfering and preventing Plaintiff from accessing the courts constitues the denial of access to courts in violation of Article IV, the First Amendment, the Fifth Amendment and the Fourtennth Amendment to the United States Constitution.

394.    The actions of defendants Doe, Doe, Doe,Doe, and Doe in failing to tranfer Plaintiff to the hospirtal for competency in a timely manner and leaving Plaintiff incarcerated and extra four (4) months for no reason constitues denial of due precess in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

RELIEF REQUESTED

WHEREFORE, Plaintiff requests that the Court grant thr following relief:

A.Issue a declaratory judgement stating that:

1. The loss of liberty in wrongful confinement because of defendants Hernandez, Betancourt, Munoz, Sampson, Choi, Doe, Doe, Doe, Quiroz, Doe, Doe, Solis, and Delport violated Plaintiff's rights and constituted false imprisonment under state law.

2. The retaliation of Defendants Solis, Sampson, Quiroz, Doe, Doe, Doe, Doe, Doe, Doe, Doe, Doe, Doe, Doe, and Doe for the comments Plaintiff made on social media violated Plaintiff's rights under the Free Speech Clause of the First Amensment to the United States Constitution.

3. The prevention of practicing Plaintiff's religion by defendants Doe, Walker, Doe, Doe, Doe, Thompson, Doe, Doe, Doe, Doe, Doe, Doe, Doe, Doe, Quiroz, Doe, Doe, Doe, Doe, Doe, Doe, Doe Doe, Doe Doe, Doe, and Doe violated Plaintiff's rights under the First Amendment to the United

35/38

States Constitution.

4. The failure to transfer Plaintiff to the hospital in a timely manner by Defendants Doe, Doe, Doe, Doe, and Doe violated Plaintiff's rights under the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

5. The willful inaction and failure to defend Plaintiff effectively in Plaintiff's criminal case by defendants Solis, Sampson, and Choi violated Plaintiff's rights and constituted ineffective counsel under the Sixth Amendment of the United States Constitution.

6. Defendants Quiroz, Doe, Doe, Doe, and Choi punishing Plaintiff sadistically, maliciously, and with out justification violated Plaintiff's rights and constituted Cruel and Unusual Punishment under the Eighth Amendment to the United States Constitution.

7. The failure, inaction and willful desregard by defendants Doe, Doe, Doe, Doe, Doe, Doe, Doe, Doe, Doe, Doe,Doe, and Doe violated Plaintiff's rights and constituted Medical Malpractice and Negligence under state law.

8. Defendants Doe #453023, Doe #600726, Doe #480627, Doe #471335, Doe, and Doe purposefully interfered in Plaintiff's attempts to try to access the courts and violated Plaintiff's rights under Article IV and the First, Fifth, and Fourteenth Amensments of the United States Constitution.

B. Award compensatory damages in the following amounts:

1. $ 27, 084, 000. 00 jointly against defendants Hernandez, Munoz, Doe, Doe, Doe, Solis, Betancourt and Delport for the physical, mental and emotional injuries sustained as a result of the loss of liberty in wrongful confinement.

2. $ 13, 908, 000.00 jointly aginst defendants Sampson, Choi, Doe, Doe, Quiroz, for the physical mental, and emotional injuries  sustained as a result of the loss of liberty in wrongful confinement.

3. $ 50, 000.00 jointly aginst defendants Doe, Doe, Doe, Doe, Doe, Doe, Doe, Doe, Doe, Doe, Doe, and Doe for the physical, mental, and emotional injuries resulting from their failure to provide adequate medical care to the Plaintiff.

C. Award compensatory damages jointly and severally againts:

1. Defendants Solis, Sampson, Quiroz, Doe, Doe, Doe, Doe, Doe, Doe, Doe, Doe, Doe, Doe,and Doe for the mental and emotional injuries sustained as a result of the retaliation of Plaintiff's free

36/38

speech.

2. Defendanants Doe, Walker, Doe, Doe, Doe, Thompson, Doe, Doe, Quiroz, Doe, Doe, Doe, Doe, Doe, Doe, Doe, Doe, Doe, Doe, Doe, and Doe for the mental and emotional injuries resulting from the denial of free excercise of religion to Plaintiff.

3. Defendants Doe, Doe, Doe, Doe, and Doe for the mental and emotional injuries sustained from the extremely delayed transfer of Plaintiff to the hospital.

4. Defendant Solis,Sampson, and Choi for mental and emotional injuries as well as the inconvinience caused by the ineffective counsel and the impediment of Plaintiff's defense.

5. Defendant Quiroz, Doe, Doe, Doe, and Choi for the mental and emotional injuries sustained as a result of the cruel and unusual punishmnet of the Plaintiff.

6. Defendants Doe #453023, Doe #600726, Doe #480627, Doe #471335, Doe, and Doe for the mental and emotional injuries sustained by Plaintiff for the denial of access to the courts.

D. Grant such other relief as it may appear Plaintiff is entitled.




Pursuant to 28 U.S.C. § 1746, I declare( or certify, verify, or state) under pain and penalty of perjury that the above stated is true and correct. ¶¶ 1-32, 34-71, 73-90, 93-103, 105-141, 143-166, 168-262, 264-384, and 386-394.

_12-31-23_____        _Oscar A. Gonzalez Cortez_____
        DATE                                              SIGNATURE OF PLAINTIFF


Plaintiff states that the above stated is true and correct on "Information and Belief". ¶¶ 33, 72, 91, 92, 104, 142, 167, 263, and 385.


_12-31-23_____        _Oscar A. Gonzalez Cortez_____
        DATE                                              SIGNATURE OF PLAINTIFF

37/38

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

RESPECTFULLY SUBMITTED,

12-31-23

_____

DATE



_____

SIGNATURE OF PLAINTIFF

38/38